| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Lovee D. Sarenas (SBN 204361)<br>E-mail: Lovee.sarenas@dinsmore.com<br>DINSMORE & SHOHL LLP<br>550 S. Hope Street, Suite 2800<br>Los Angeles, CA 90071<br>Telephone:  (213) 335-7737<br><br>Counsel for the Chapter 7 Trustee Nancy Zamora | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION**

| In re:<br>Wilshire Health & Community Services, Inc., | CASE NO.: 9:25-bk-11032-RC<br>CHAPTER: 7 |
|---|---|
| | **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION LBR 9013-1(o)(3)** |
| Debtor(s). | [No Hearing Required] |

1.  I am the ☐ Movant(s) or ☒ attorney for Movant(s) or ☐ employed by attorney for Movant(s).

2.  On (*date*):  9/11/25      Movant(s) filed a motion or application (Motion) entitled: _____
    APPLICATION TO EMPLOY HAYS FINANCIAL GROUP, LLC AS QUALIFIED RETIREMENT PLAN
    CONSULTANT TO CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014

3.  A copy of the Motion and notice of motion is attached to this declaration.

4.  On (*date*):  9/23/25      Movant(s), served a copy of ☐ the notice of motion or ☒ the Motion and notice of motion
    on required parties using the method(s) identified on the Proof of Service of the notice of motion.

5.  Pursuant to LBR 9013-1(o), the notice of motion provides that the deadline to file and serve a written response and
    request for a hearing is 14 days after the date of service of the notice of motion, plus 3 additional days if served by
    mail, or pursuant to F.R.Civ.P. 5(b)(2)(D) or (F).

6.  More than 17 days have passed after Movant(s) served the notice of motion.

7.  I checked the docket for this bankruptcy case and/or adversary proceeding, and no response and request for hearing
    was timely filed.

8.  No response and request for hearing was timely served on Movant(s) via Notice of Electronic Filing, or at the street
    address, email address, or facsimile number specified in the notice of motion.

9.  Based on the foregoing, and pursuant to LBR 9013-1(o), a hearing is not required.

Movant(s) requests that the court grant the motion and enter an order without a hearing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Date:  10/15/25           /s/ Lovee D. Sarenas _____
                          Signature

                          Lovee D. Sarenas _____
                          Printed name

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# Attachment

Peter J. Mastan (SBN 190250)
E-mail: *peter.mastan@dinsmore.com*
Lovee D. Sarenas (SBN 204361)
E-mail: *lovee.sarenas@dinsmore.com*
**DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 2800
Los Angeles, CA 90071
Telephone: (213) 335-7737
Facsimile: (213) 335-7740

Proposed Counsel to the Chapter 7 Trustee
Nancy Zamora

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No.: 9:25-bk-11032 RC |
| WILSHIRE HEALTH & COMMUNITY SERVICES, INC.,[1] | Chapter 7 |
| Debtor. | **NOTICE OF APPLICATION TO EMPLOY HAYS FINANCIAL GROUP, LLC AS QUALIFIED RETIREMENT PLAN CONSULTANT TO THE CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014** |
| | [No Hearing Required Unless Requested – LBR 9013-1(o)(1)] |
| | Honorable Ronald A. Clifford III Courtroom 201 |

**TO THE HONORABLE RONALD A. CLIFFORD III, UNITED STATES BANKRUPTCY JUDGE, THE UNITED STATES TRUSTEE, THE DEBTOR, ALL CREDITORS, AND THEIR RESPECTIVE COUNSEL, IF ANY:**

**PLEASE TAKE NOTICE** that Nancy Zamora, the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of the debtor Wilshire Health & Community Services, Inc. ("Debtor")

---

[1] The following related cases are affiliated with the Debtor: *Wilshire Connected Care, Inc.* (9:25-bk-11028-RC); *Wilshire Community Services, Inc.* (9:25-bk-11031-RC), *Wilshire Management Services, Inc.* (9:25-bk-11029-RC), and *Hospice Partners, Inc.* (9:25-bk-11033-RC).

1

in the above-captioned bankruptcy case ("Case"), filed with the Court an application

("Application") for authority to employ Hays Financial Group, LLC ("HFG") to serve as the

Estate's qualified retirement plan consultant ("Retirement Plan Consultant"). Prior to the

commencement of its Case, Debtor had a 403(b) qualified retirement plan ("Plan") with assets that

were being administered by The Standard. The Plan has not been terminated as of the Debtor's

chapter 7 bankruptcy filing. Trustee requires the assistance of HFG to terminate the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the statutory predicate for the relief

sought in the Application is 11 U.S.C. § 327(a). The Application is brought pursuant to Rule

2014(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 2014-1(b)

of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

California ("Local Rules").

**PLEASE TAKE FURTHER NOTICE THAT** the Trustee has agreed, subject to

bankruptcy court approval, that HFG will be compensated solely from the assets within the Plan

pursuant to the Safe Harbor Rollover IRA Service Agreement provided under the Qualified Plan

Termination Service Agreement ("Agreement"). Under the Agreement, HFG shall be paid an

annual fee equivalent to approximately 0.6% of the value of assets from Plan participant accounts

that are rolled into a safe harbor IRA at IRALogix. Participant accounts will be rolled to these safe

harbor IRAs only if the participant failed to transfer distributions to another qualified retirement

plan or make any other distribution election during the safe harbor notice period. HFG will notify

Plan participants of the safe harbor IRA procedure as part of its work. The Estate is not obligated

to pay HFG from Estate assets nor will HFG receive any compensation from the Plan trust.

HFG has not received a retainer in this Case and the Estate is not obligated to pay HFG

from Estate assets. HFG shall be paid within the customary time frame it is paid for such services

and shall be compensated for its fees from funds in the safe harbor IRAs without any further

application or order from this Court.

Pursuant to the Declaration of Brian Whinney, the Trustee believes that no agreement or

understanding exists between HFG and any other entity for sharing compensation to be received

for services rendered herein except as among and between the members of the firm. HFG is a

#64414670v1

1 disinterested person within the meaning of 11 U.S.C. § 101(14) and does not hold an interest

2 adverse to the Estate.

3     **PLEASE TAKE FURTHER NOTICE THAT** the Application is on file with the

4 Bankruptcy Court and is available through the Court's CM/ECF electronic document filing system

5 or the office of the Clerk of the Court located at 1415 State Street, Santa Barbara, CA 93101. A

6 copy of the Application may also be requested in writing from Lovee D. Sarenas of Dinsmore at

7 the address set forth above.

8     **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rules 2014-1(b)(3)(E),

9 9013-1(f) and 9013-1(o)(1)(A)(ii), any response and request for hearing must be (i) in writing

10 with a complete statement of all reasons in opposition thereto or in support or joinder thereof,

11 declarations and copies of all documentary evidence on which the responding party intends to

12 rely and any responding memorandum of points and authorities, and (ii) filed with the Court and

13 served on the Trustee, proposed counsel for the Trustee, HFG, and the United States Trustee

14 within fourteen (14) days after the date of service of this Notice, plus three (3) calendar days if

15 service was by mail, at the following addresses:

16
| | |
|---|---|
| **Chapter 7 Trustee:** | **Court:** |
| Nancy Zamora | Hon. Ronald Clifford III |
| Chapter 7 Trustee | United States Bankruptcy Court |
| Zamora & Hoffmeier | 1415 State Street, Suite 233 |
| 633 W. 5th Street, Suite 2600 | Santa Barbara, CA 93101 |
| Los Angeles, CA 90071-2053 | |
| | |
| **Counsel to the Trustee:** | **U.S. Trustee:** |
| Lovee D. Sarenas, Esq. | Office of the U.S. Trustee |
| Dinsmore & Shohl LLP | 1415 State Street, Suite 148 |
| 550 S. Hope Street, Suite 2800 | Santa Barbara, CA 93101 |
| Los Angeles, CA 90071-2627 | |
| | |
| **Hays Financial Group:** | |
| Attn: Nick Carlson | |
| 901 S Marquette Ave. Suite 1990 | |
| Minneapolis, Minnesota 55402 | |

25 / / /

26 / / /

27

28

#64414670v1

1          **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), the failure to

2    file and serve a timely response to the Application or request a hearing on the Application

3    may be deemed by the Court to be consent to the granting of the relief requested in the

4    Application.

5    Dated: September 23, 2025                DINSMORE & SHOHL LLP

6
                                             By: /s/ Lovee D. Sarenas
7                                                Lovee D. Sarenas, Esq.
                                                 Proposed Counsel to Nancy Zamora, Chapter 7 Trustee
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#64414670v1

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is **655 West Broadway, Suite 800, San Diego, CA 92101**

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF APPLICATION TO EMPLOY HAYS FINANCIAL GROUP, LLC AS QUALIFIED RETIREMENT PLAN CONSULTANT TO THE CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) September 23, 2025, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Paul F Ready** - becky@farmerandready.com
- **Lovee D Sarenas** - lovee.sarenas@dinsmore.com, wendy.yones@dinsmore.com; adelya.ashralieva@dinsmore.com
- **United States Trustee (ND)** - ustpregion16.nd.ecf@usdoj.gov
- **Nancy J Zamora (TR)** - zamora3@aol.com, nzamora@ecf.axosfs.com

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) September 23, 2025, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

      Honorable Ronald A. Clifford III
      United States Bankruptcy Court
      1415 State Street, Suite 233 / Courtroom 201
      Santa Barbara, California 93101-2511

      SLBiggs
      10960 Wilshire Blvd., Ste. 1100
      Los Angeles, CA 90024

      Hays Financial Group
      901 S. Marquette Ave., Ste. 1990
      Minneapolis, MN 55402

                 ☒   Service information continued on attached page

5

#64414670v1

1

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE
TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to

2

F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons

3

and/or entities by personal delivery, overnight mail service, or (for those who consented in writing
to such service method), by facsimile transmission and/or email as follows. Listing the judge here

4

constitutes a declaration that personal delivery on, or overnight mail to, the judge will be
completed no later than 24 hours after the document is filed.

5

6

☐  Service information continued on attached page

7

I declare under penalty of perjury under the laws of the United States that the foregoing is true and
correct.

8

9

| September 23, 2025 | Wendy A. Yones | /s/ Wendy A. Yones |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

#64414670v1

Label Matrix for local noticing
0973-9
Case 9:25-bk-11032-RC
Central District of California
Santa Barbara
Tue Sep 23 09:43:47 PDT 2025

10960 Wilshire Blvd., Ste. 1100
Los Angeles, CA 90024-3714

Wilshire Health & Community Services, Inc.
PO Box 409
Nipomo, CA 93444-0409

Northern Division
1415 State Street,
Santa Barbara, CA 93101-2511

1st Alarm Inc
7212 Joliet Ave #3
Lubbock, TX 79423-1123

AMN Healthcare Inc
2999 Olympus Blvd
Coppell, TX 75019-1205

Amazon Capital Services
410 Terry Avenue North
Seattle, WA 98109-5210

Anne Krache, Esq.
Shook, Hardy & Bacon, LLP
One Federal Street, Suite 2620
Boston, MA 02110-2012

Blue Shield of California
601 12th Street, 23rd Floor
Oakland, CA 94607-3885

Blue Shield of California
PO Box 272560
Chico, CA 95927-2560

Caliber Audit and Attest
805 Aerovista Place
Ste 103
San Luis Obispo, CA 93401-7921

Clever Concepts, Inc.
3990 Ruth Way C
Paso Robles, CA 93446-5996

Core Medical Group
655 S Willow St
Ste 128
Manchester, NH 03103-5723

Crossroads Technologies, Inc
108 N. Centre Ave.
Leesport, PA 19533-8865

Culligan Water
9339 W. Higgins Road
Ste 1100
Des Plaines, IL 60018

Dayforce Inc
3311 East Old Shakopee Road
Minneapolis, MN 55425-1361

(p)DE LAGE LANDEN FINANCIAL
ATTN LITIGATION & RECOVERY
1111 OLD EAGLE SCHOOL ROAD
WAYNE PA 19087-1453

EP Wealth Advisors
892 Aerovista Place
Ste 220
San Luis Obispo, CA 93401-8054

Employment Development Department
Bankruptcy Special Procedures Group
PO Box 826880 MIC 92E
Sacramento, CA 94280-0001

Family & Industrial Medical Center
47 Santa Rosa St
San Luis Obispo, CA 93405-1811

Foley & Lardner LLP
777 East Wisconsin Ave
Milwaukee, WI 53202-5306

Forcura LLC
10151 Deerwood Park Blvd
Bldg 400 Ste 400
Jacksonville, FL 32256-0592

Forvis Mazars LLP
4350 Congress Street
Ste 900
Charlotte, NC 28209-4866

Fusion Medical Staffing
18881 W Dodge Road
Ste 300W
Elkhorn, NE 68022-4648

Great Western Alarm
1421 Park St
Paso Robles, CA 93446-2159

HSA Bank
PO Box 939
Sheboygan, WI 53082-0939

Heartland Financial USA
1800 Larimer St
Ste 1800
Denver, CO 80202-1411

Heffernan Insurance Brokers
1350 Carlback Avenue
Walnut Creek, CA 94596-4284

Ignition36 Media
1525 Via Rosa
Paso Robles, CA 93446-1842

(p)INOVALON
ATTN CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON DE 19808-1674

Iron Mountain Records Mgt.
33 Arch St
Boston, MA 02110-1424

Navarr Medical Staffing
9394 W Dodge Rd
Ste 300
Omaha, NE 68114-3319

Mckesson Medical-Surgical
6555 State Hwy 161
Irving, TX 75039-2402


Medline Industries, Inc
3 Lakes Drive
Winnetka, IL 60093-2753

NAHC
228 Seventh Street SE
Washington, DC 20003-4306

Netsmart Technologies, Inc
11100 Nail Avenue
Leawood, KS 66211-1205


Netsmart Technologies, Inc.
Anne Krache, Esq.
Shook, Hardy & Bacon LLP
One Federal Street, Suite 2620
Boston, MA 02110-2012

PG&E
The Gas Company
PO Box C
Monterey Park, CA 91754-0932

Pacific Storage Company
3439 Brookside Road, Ste 206
Stockton, CA 95219-1768


Pacifica Commercial Realty
2520 Professional Parkway
Santa Maria, CA 93455-1602

Philadelphia Insurance Co
231 Saint Asaphs Road
Ste 100
Bala Cynwyd, PA 19004-1498

Pitney Bowes
3001 Summer Street
Stamford, CT 06926-0700


Poor Richards Press
2226 Beebee St.
San Luis Obispo, CA 93401-5505

Premium Life Care, Inc.,
DBA BrightStar Care of San Luis Obispo
3220 S Higuera Street, Suite 315
San Luis Obispo, CA 93401-6982

Relias Learning
1010 Sync St, Ste 100
Morrisville, NC 27560-5473


Samson Funding
17 State St
New York, NY 10004-1501

Shield Healthcare
27911 Franklin Parkway
Valencia, CA 91355-4110

Staples Business Advantage
210 Commerce Way
Ste 130
Portsmouth, NH 03801-8202


(p)STAPLES BUSINESS ADVANTAGE THOMAS RIGGLEMA
7 TECHNOLOGY CIRCLE
COLUMBIA SC 29203-9591

Strategic Healthcare Programs, LLC
6500 Hollister Ave, Ste 210
Goleta, CA 93117-5554

US Fire Insurance Company
305 Madison Ave
Morristown, NJ 07960-6117


United States Trustee (ND)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Ventura Medstaff LLC
2909 N 118th St, Ste 200
Omaha, NE 68164-3643

Verity Screening Solutions
6834 S University Blvd, #506
Littleton, CO 80122-1515


Verizon
PO Box 920041
Dallas, TX 75392-0041

Wellsky
11300 Switzer Road
Overland Park, KS 66210-3665

Westwinds Business Park
285 South St
San Luis Obispo, CA 93401-5037


Nancy J Zamora (TR)
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, CA 90071-2053

Paul F Ready
Farmer & Ready
1254 Marsh St POB 1443
San Luis Obispo, CA 93406-1443

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


DeLage Landen Financial Services        Inovalon Provider, Inc              (d)Inovalon Provider, Inc
PO Box 41602                            100 N 6th Street                    4321 Collington Road
Philadelphia, PA 19101-1602             Suite 900A                          Bowie, MD 20716
                                        Minneapolis, MN 55403-1516


Staples, Inc.                           End of Label Matrix
Staples / Shane Anderson                Mailable recipients      58
PO Box 102419                           Bypassed recipients       0
Columbia, SC 29224                      Total                    58

Peter J. Mastan (SBN 190250)
E-mail: *peter.mastan@dinsmore.com*
Lovee D. Sarenas (SBN 204361)
E-mail: *lovee.sarenas@dinsmore.com*
**DINSMORE & SHOHL LLP**
550 S. Hope Street, Suite 2800
Los Angeles, CA 90071
Telephone: (213) 335-7737
Facsimile: (213) 335-7740

Proposed Counsel to the Chapter 7 Trustee
Nancy Zamora

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>WILSHIRE HEALTH & COMMUNITY SERVICES, INC.,[1]<br><br>Debtor. | Case No.: 9:25-bk-11032-RC<br><br>Chapter 7<br><br>**APPLICATION TO EMPLOY HAYS FINANCIAL GROUP, LLC AS QUALIFIED RETIREMENT PLAN CONSULTANT TO THE CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014; DECLARATION OF BRIAN WHINNERY IN SUPPORT THEREOF**<br><br>[No Hearing Required Unless Requested – LBR 9013-1(o)(1)]<br><br>Honorable Ronald A. Clifford III<br>Courtroom 201 |

Nancy Zamora, the chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of the debtor Wilshire Health and Community Services, Inc. d.b.a. Wilshire Home Health ("Debtor") in the above-captioned bankruptcy case ("Case"), hereby submits this application ("Application") to the Court for an order authorizing the employment of Hays Financial Group, LLC ("HFG") to

---

[1] The following related cases are affiliated with the Debtor: *Wilshire Connected Care, Inc.* (9:25-bk-11028-RC); *Wilshire Community Services, Inc.* (9:25-bk-11031-RC), *Wilshire Management Services, Inc.* (9:25-bk-11029-RC), and *Hospice Partners, Inc.* (9:25-bk-11033-RC).

1

#64259166v3

1    serve as the Estate's qualified retirement plan consultant ("Retirement Plan Consultant").  This

2    Application is brought pursuant to 11 U.S.C. § 327(a)[2], Rule 2014(a) of the Federal Rules of

3    Bankruptcy Procedure ("Bankruptcy Rules"), and Rule 2014-1(b) of the Local Bankruptcy Rules of

4    the United States Bankruptcy Court for the Central District of California ("Local Rules").  In

5    support of this Application, the Trustee submits the attached Declaration of Brian Whinnery

6    ("Whinnery Declaration") and respectfully represents as follows:

7    **I.**    **INTRODUCTION**

8           **A.**    **The Debtor's Bankruptcy Filing**

9           The Debtor and four affiliated entities each commenced a voluntary bankruptcy case under

10    chapter 7 of title 11 of the United States Code ("Bankruptcy Code") on August 1, 2025 ("Petition

11    Date") in the United States Bankruptcy Court for the Central District of California, Northern

12    Division ("Court").  Nancy Zamora ("Trustee") was appointed as the Trustee for the Debtor's

13    Estate [ECF No. 2].

14           Prior to the Petition Date, the Debtor operated a patient and hospice care business that

15    provided clinical and other social services to seniors who live in San Luis Obispo county.  As an

16    operating business, Debtor had employees who were contributing to a 403(b) qualified retirement

17    plan ("Plan") with assets that were being administered by The Standard.  The Plan has not been

18    terminated as of the Debtor's chapter 7 bankruptcy filing.

19           The Trustee has determined that it is in the best interest of the Estate to terminate the Plan

20    and distribute the Plan assets to its participants.  In order to do so, the Trustee intends to employ

21    HFG to serve as the Estate's Retirement Plan Consultant and assist with this process.

22    **II.**    **EMPLOYMENT OF HFG**

23           Under Bankruptcy Code § 704(a)(11), if the debtor (or any entity designated by the debtor)

24    served as the administrator of an employee benefit plan at the time of the commencement of the

25    case, The Trustee has a duty to continue to perform the obligations required of the administrator.

26    This obligation includes the termination of a retirement plan when a debtor, in chapter 7, ceases its

27

28    [2] All statutory references are to Title 11 of the United States Code also known as the Bankruptcy
Code unless specified otherwise.

#64259166v3

operations.

By this Application, the Trustee seeks the entry of an order pursuant to section 327(a) of the Bankruptcy Code that authorizes the retention and employment of HFG to serve as the Estate's Plan consultant and assist with terminating the Plan.

**A.    Qualifications**

HFG has the expertise in providing retirement and fiduciary services and consulting related to qualified and non-qualified retirements plans under ERISA, 401(b), and 403(b) benefit plans and other pension or profit-sharing plans.  Its team of advisors are well-versed in the procedures and regulatory requirements for terminating qualified retirement plans such as the Debtor's.  The firm is a full-service firm that assists with document preservation, filing, distribution of assets, liaising with Internal Revenue Service ("IRS") representatives, and providing support to employees and employers alike in order to ensure full compliance with the federal regulations on qualified retirement plans.

The Trustee designates Brian Whinnery, President of HFG, as lead consultant for the Trustee.  He will be assisted by Nick Carlson, one of HFG's retirement plan consultants who specializes in the termination of retirement plans involved in bankruptcy cases.  Biographies of the foregoing professionals demonstrating their qualifications are attached to the Whinnery Declaration and incorporated herein by reference as **Exhibit A.**

Based on the foregoing, the Trustee has determined that it is in the best interest of the Estate to employ HFG as the Retirement Plan Consultant for the Estate and to employ its services as necessary and appropriate in this Case.

**B.    Scope of Proposed Employment**

As the Retirement Plan Consultant for the Estate, HFG will assist the Trustee with the following tasks:

1.    Reviewing and analyzing the Debtor's retirement plan documents and records.

2.    Preparing and filing all documents necessary to wind down and terminate the Plan as required by the Plan's administrator, the IRS, the Department of Labor (DOL), and other relevant agencies and parties.

3

3. Communicating with, and notifying, Plan participants regarding the termination process and the distribution options available to all participants of the Plan.

4. Ensuring compliance with all applicable laws and regulations during the termination process.

5. Advising the Trustee, as necessary, of certain rights, and duties of the Estate in connection with the termination of the Plan.

6. Liaising with representatives from IRS, other government agencies, and Plan administrator on behalf of the Estate, as appropriate.

7. Providing any other services that the Trustee may request and that are necessary for the efficient and effective termination of the Debtor's Plan.

**C.    <u>Disinterestedness</u>**

HFG submits concurrently herewith the Whinnery Declaration in compliance with Bankruptcy Rule 2014 disclosing HFG's connections with the Debtor, creditors of the Debtor, the Estate, the Office of the United States Trustee ("UST") or any of its employees, the bankruptcy judge presiding in this Case, or any other known party in interest. As set forth in the Whinnery Declaration, HFG is a disinterested person as the term is defined under Bankruptcy Code § 101(14). In addition, HFG has no connections with, and holds no interest adverse to, the Debtor, its creditors, any other party-in-interest, its respective attorneys and accountants, the United States Trustee, or any other person employed in the Office of the United States Trustee.

HFG is neither a creditor of the Debtor nor does it represent any creditor of this Estate. As such, HFG represents no interest adverse to the Debtor or to the Estate in connection with the matter in which HFG is to be employed.

**III.    <u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

Trustee has agreed, subject to bankruptcy court approval, and HFG has accepted that HFG will be compensated solely from the assets within the Plan pursuant to the Safe Harbor Rollover IRA Service Agreement provided under the Qualified Plan Termination Service Agreement ("Agreement") and noticed to plan participants by HFG as part of its work. A true and correct copy of the Agreement is attached to the Whinnery Declaration as **Exhibit B** and incorporated herein by

4

#64259166v3

reference.

Under the Agreement, HFG shall be paid an annual fee equivalent to approximately 0.6% of the value of assets from Plan participant accounts that are rolled into a safe harbor IRA at IRALogix. Participant accounts will be rolled to these safe harbor IRAs only if the participant failed to transfer distributions to another qualified retirement plan or make any other distribution election during the safe harbor notice period. The Estate is not obligated to pay HFG from Estate assets nor will HFG receive any compensation from the Plan trust.

HFG has not received a retainer in this Case and the Estate is not obligated to pay HFG from Estate assets. HFG shall be paid within the customary time frame it is paid for such services and shall be compensated for its fees from funds in the safe harbor IRAs without any further application or order from this Court.

Pursuant to the Whinney Declaration, the Trustee believes that no agreement or understanding exists between HFG and any other entity for sharing compensation to be received for services rendered herein except as among and between the members of the firm.

This Application is filed pursuant to 11 U.S.C. § 327 and creditors were served concurrently with the notice of this Application.

## IV.    **CONCLUSION**

**WHEREFORE**, the Trustee respectfully requests that this Court enter an order authorizing her to employ HFG as the Estate's Retirement Plan Consultant and to permit HFG to be paid from assets of the Plan pursuant to the terms of the Agreement without further application or order from this Court.

Dated: September 22, 2025

Nancy Zamora, Chapter 7 Trustee

**Prepared and submitted by:**

DINSMORE & SHOHL LLP

By: /s/  Lovee D. Sarenas
        Peter J. Mastan
        Lovee D. Sarenas
Proposed Counsel to Trustee

5

#64259166v3

## DECLARATION OF BRIAN WHINNERY

I, BRIAN WHINNERY, declare as follows:

1.      I am over the age of 18 and the President of Hays Financial Group ("HFG"), the proposed retirement plan consultant for the chapter 7 trustee Nancy Zamora ("Trustee") in the bankruptcy case (Case") of the debtor Wilshire Health and Community Services, Inc. ("Debtor").

2.      I submit this declaration ("Declaration") in support of the *Application to Employ Hays Financial Group, LLC as Qualified Retirement Plan Consultant to the Chapter 7 Trustee Pursuant to 11 U.S.C. § 327(A) and Fed. R. Bankr. P. 2014;* (the "Application") filed herewith.

3.      Except as expressly stated herein, the facts stated below are personally known to me, and if called as a witness, I could and would competently testify to the truth of such facts.

4.      HFG specializes in providing retirement and fiduciary services and consulting on qualified and non-qualified retirements plans under ERISA, 401(b), and 403(b) benefit plans and other pension or profit-sharing plans.  Its team of advisors are well-versed in the procedures and regulatory requirements for terminating qualified retirement plans such as the Debtor's.  In addition, the firm is a full-service firm that assists with document preservation, filing, distribution of assets, liaising with Internal Revenue Service ("IRS") representatives, and providing support to employees and employers alike in order to ensure full compliance with the federal regulations on qualified retirement plans.

5.      Biographies of HFG professionals who will be working primarily in this case are attached hereto as **Exhibit A** and incorporated herein by reference.

6.      I have been advised and therefore believe that as of the commencement of the Case, the Debtor had an existing qualified retirement plan ("Plan") with assets that were being administered by The Standard.  The Plan has not been terminated as of the Debtor's chapter 7 bankruptcy filing.

7.      The Trustee has requested therefore, and HFG has accepted, to serve as the Trustee's qualified retirement plan consultant ("Retirement Plan Consultant") to assist with the termination of the Plan in compliance with the applicable federal and tax regulations.

/ / /

6

#64259166v3

8.      In connection with HFG's employment in this Case, HFG has agreed to perform the following services to the Estate:

    a.   Reviewing and analyzing the Debtor's retirement plan documents and records.

    b.   Preparing and filing all documents necessary to wind down and terminate the Plan as required by the Plan's administrator, the IRS, the Department of Labor (DOL), and other agencies or parties.

    c.   Communicating with, and notifying, Plan participants regarding the termination process and the distribution options available to all participants of the Plan.

    d.   Ensuring compliance with all applicable laws and regulations during the termination process.

    e.   Advising the Trustee, as necessary, of certain rights, and duties of the Estate in connection with the termination of the Plan.

    f.   Liaising with representatives from IRS, other government agencies, and Plan administrator on behalf of the Estate, as appropriate.

    g.   Providing any other services that the Trustee may request and that are necessary for the efficient and effective termination of the Debtor's Plan.

9.      At my direction, HFG has conducted a thorough review of HFG's clients and associates to determine its connection in this Case.

10.     To the best of my knowledge, information, and belief, HFG has no connection with the Debtor, the Estate, the creditors of the Debtor, the Office of the United States Trustee ("UST") or any of its employees, the bankruptcy judge presiding in this Case, or any other known party in interest.

11.     HFG is not a creditor, an equity security holder, or an insider of the Debtor.

12.     HFG is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the Debtor.

13.     Neither HFG nor its employees have an interest materially adverse to the Estate or of any creditors or security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor as it relates with the matter in which HFG is to be employed.

7

#64259166v3

14.    I believe HFG is a disinterested person as the term is defined under the Bankruptcy Code.

15.    The Trustee and HFG have agreed that HFG will be compensated solely from the assets within the Plan pursuant to the Safe Harbor Rollover IRA Service Agreement provided under the Qualified Plan Termination Service Agreement ("Agreement").

16.    A true and correct copy of the Agreement is attached hereto as **Exhibit B** and incorporated herein by reference.

17.    HFG shall be paid an annual fee equivalent to approximately 0.6% of the value of assets from Plan participant accounts that are rolled into a safe harbor IRA at IRALogix. Participant accounts will be rolled to these safe harbor IRAs only if the participant failed to transfer distributions to another qualified retirement plan or make any other distribution election during the safe harbor notice period.  The Estate is not obligated to pay HFG from Estate assets nor will HFG receive any compensation from the Plan trust.

18.    HFG shall be paid within the customary time frame it is paid for such services and shall be compensated for its fees from funds in the safe harbor IRAs without any further application or order from this Court.

19.    HFG has not received a retainer in this Case.

20.    HFG has no agreement or understanding with any other entity for sharing compensation to be received for services rendered herein except as among and between the members of the firm.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on 22nd of September, 2025 in Minneapolis, Minnesota.

#64259166v3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Brian Whinnery*

_____

Brian Whinnery

#64259166v1

**EXHIBIT A**

Professional Biographies

#64259166v3

**Brian Whinnery**

**President**



**Phone:** (612) 373-9865

**Email:** bwhinnery@haysfinancial.com

**Mobile:** (612) 373-9865

Brian is the President of Hays Financial Group and is involved in all phases of the employee benefits organization. Brian's dedicated to formulating financial solutions that are goal-oriented and transformative for everyone involved.

His commitment to supporting clients stems from his experience in retirement plan design and investment management. His passion for financial equity and empowerment drives him to create diverse solutions and resources that address each individual's needs.

Brian is a University of St Thomas alum and has been recognized as one of the "2017 Top Retirement Plan Advisers Under 40" by industry peers and the NAPA member committee. Additionally, he was recognized as one of the top 401 Retirement Advisors by the Financial Times in 2015. Brian and his wife live in Minneapolis with their three children.

https://www.haysfinancialgroup.com/employee/brian-whinnery/?parent=49

**Nick Carlson**

**Retirement Plan Consultant**



**Phone:** (612) 709-9136

**Email:** ncarlson@haysfinancial.com

Nick is a Retirement Plan Consultant at HFG. Nick's primary focus is on retirement plan terminations, particularly in cases involving Chapter 7 bankruptcies. He supports trustees by managing the technical and regulatory aspects of plan terminations, ensuring a smooth, compliant process from start to finish.

Nick prides himself on building strong relationships through communication and helping people. Known for his clarity and calm under pressure, Nick thrives in fast-paced, high-stakes environments. He is committed to delivering actionable insights, prioritizing service, detail, and trust to guide clients through every phase of their financial journey.

Nick earned his Bachelor's in Financial Management from the University of St. Thomas. In his free time, he enjoys hunting, fishing, and spending time with his family & friends on the lake. He currently resides in Hopkins, MN.

https://www.haysfinancialgroup.com/employee/nick-carlson/?parent=49

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

Agreements

#64259166v3

# Qualified Plan Termination Service Agreement

**This Service Agreement** ("Agreement") is made and entered into as of 09.19.2025, by and between **Hays Financial Group, LLC**, a Minnesota Limited Liability Company and Registered Investment Advisory Firm ("Service Provider"), and **Nancy June Rivera-Zamora**, solely in her capacity as chapter 7 trustee ("Client") of the bankruptcy estate in the case captioned *In re Wilshire Health & Community Services, Inc.* ("Debtor"), Case No. 9:25-bk-11032-RC pending in the U.S. Bankruptcy Court for the Central District of California ("Court").

## 1. Qualified Retirement Plan Termination Services for:

| | |
|---|---|
| **Plan Sponsor Name:** | Wilshire Health and Community Services, Inc. |
| **Plan Sponsor Address:** | 285 South Street Suite J SAN Luis Obispo, CA 934015037 |
| **Phone/Email:** | 805-547-7025 |

| | |
|---|---|
| **Plan Tax ID:** | 95-2374185 |
| **Authorized Signers:** | Nancy June Rivera- Zamora |

**Plan Type:**

- ☒ **Defined Contribution Plan (Participant-Directed)**
- ☐ **Defined Contribution Plan (NOT Participant-**
- ☐ **Directed) Defined Benefit Plan**
- ☐ **Other – Please Specify** _____

**Qualified Plan Record Keeper:** _____The Standard_____
**Plan Assets:** _____8,200,000_____
**Plan Participants:** _____186_____

## 1.1   Consulting Services for Client:

Service Provider agrees to provide the following services to Client in connection with the formal termination of Debtor's qualified retirement plan ("Plan"):

- **Plan Termination Assistance**: Amend the Plan to establish a termination date, update the Plan for all changes in the law or plan qualification requirements

effective on the Plan's termination date.

- **Notification**: Notify all Plan participants and beneficiaries about the Plan termination and distribution requirements.
- **Vesting**: Ensure full vesting of employer contributions to all affected participants.
- **Compliance**: Complete year-end testing and any required corrective actions.
- **Distribution**: Distribute all Plan assets in accordance with plan termination guidelines. Service Provider will ensure non-responsive participants are rolled to the safe-harbor IRA provider detailed in the Rollover IRA service agreement.
- **Reporting**: File applicable final Form 5500 series return and, if desired, request a determination letter from the IRS regarding the Plan's qualification status at termination.

## 1.2  Consulting Services for former Employees

Service Provider agrees to provide consulting services to Debtor's former employees who have money in the terminating Plan. These services include:

- **Rollover Support**: Provide support for rolling over funds from the terminating Plan to current employers qualified retirement plan, IRA, or lumpsum distribution ensuring the process aligns with the best interests of the Plan participant.
- **Notice Delivery**: Create and ensure certified delivery of any required plan termination notices.
- **Communication Channels**: Connect with participants via preferred channels, including traditional mail, digitally, over the phone, virtually, or in person.

## 2. Fees and Payment

- **Service Fees**: Service Provider shall be paid as described in Appendix A.  Service Provider will not receive any compensation from Client nor Debtor's estate.

## 3. Term and Termination

- **Term**: This Agreement shall commence on the date first written above and shall continue until the completion of the services described herein, unless terminated earlier in accordance with this Agreement.
- **Termination**: Either party may terminate this Agreement upon 30 days written notice to the other party.

## 4. Confidentiality

Service Provider agrees to maintain the confidentiality of all information
provided by Client and its employees in connection with the services
provided under this Agreement.

## 5. Limitation of Liability

In no event shall Service Provider be liable for any indirect, incidental, special, or consequential damages arising out of or in connection with the administration and compliance of this qualified plan prior to the date of this agreement.

## 6. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of California. Any and all disputes arising under this Agreement shall be decided, if necessary, by the U.S. Bankruptcy Court for the Central District of California and no other tribunal.

## 7. Entire Agreement

This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings, whether written or oral, relating to the subject matter hereof.

The Parties have caused this agreement to be signed by their duly authorized representatives as of (09.19.2025).


**Hays Financial Group, LLC**

By: _____
Name (Print): Brian Whinnery
**Title: President**
Date: 09.19.2025


**Chapter 7 Trustee**


By: _____
Name (Print): **Nancy Zamora, Trustee**

**Estate of Wilshire Health & Community
Services, Inc. Case No. 9:25-bk-11032-RC**
Date: 09.19.2025

---

## Appendix A:

Service Provider will be compensated by IRALogix in accordance with
Attachment A of the Safe Harbor Rollover IRA Service Agreement provided
with this Qualified Plan Termination Service Agreement.

Service Provider will not receive any compensation from Bankruptcy Trustee
nor
Debtor's estate.

**Matrix Trust Company, Custodian**
**AUTOMATIC ROLLOVER**
**INDIVIDUAL RETIREMENT ACCOUNT**
**SERVICE AGREEMENT**

| PLAN-RELATED ENTITIES |
|---|
| **Recordkeeper (Designated Representative):**<br>IRALOGIX, Inc. |
| To be completed by the Recordkeeper (Designated Representative)<br><br>**IRA Investment Program:**  Autonomy IRA<br>**Investment Option:**  Lincoln Stable Value Fund |
| **Plan Sponsor:** _____<br>     **Address:**_____<br>     **City:**_____  **State:** _____  **ZIP:** _____<br>     **Phone Number:**  (____)_____  **Tax ID#:**_____ |
| **Plan and Trust Name(s):** _____<br><br>                  _____ |
| **Plan Fiduciary (if different):** _____<br>     **Address:** _____<br>     **City:** _____  **State:**_____  **ZIP:** _____<br>     **Phone Number:**  (____)_____  **Tax ID#:**_____ |
| **Plan Administrator[1]:** |

This Automatic Rollover Individual Retirement Account Service Agreement (the "Agreement") is entered into by and between Matrix Trust Company ("Matrix Trust") (the "Custodian"), and the Plan Sponsor (named above), each also referred to as "Party" individually or collectively as "Parties," effective as of _____, 20____ (the "Effective Date")

---

[1] This term also includes a person functioning as an administrator to a non-ERISA 403(b) plan.

# AGREEMENT

Whereas, the Plan Sponsor maintains the above-referenced Plan; and

Whereas, the Plan Sponsor is the fiduciary of the Plan, as such term is defined in Section 3(21) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

Whereas, as permitted by the Internal Revenue Code of 1986, as amended ("Code"), the Plan requires "Mandatory Distributions," defined as follows: (a) an immediate distribution from an ongoing plan to a terminated participant without such participant's consent if the present value of the participant's vested accrued benefit (i) exceeds $1,000 but does not exceed $5,000 (or does not exceed $7,000 for distributions occurring after December 31, 2023), and/or (ii) is equal to or less than $1,000; or (b) a distribution following termination of the Plan; and

Whereas, Code Section 401(a)(31)(B) requires, and the fiduciary safe harbors provided under Title 29 of the Code of Federal Regulations, Section 2550.404a-2 and Section 2550.404a-3, respectively, (each a "DOL Regulation," and collectively the "DOL Regulations") permit the Plan to provide that Mandatory Distributions be rolled over into individual retirement accounts ("IRAs") established by the plan administrator to the extent that Plan participants do not elect to either have such distributions paid directly to an eligible retirement plan, or to receive the distribution directly ("Automatic Rollovers"); and

Whereas, the Custodian offers IRAs through custodial accounts that meet the requirements of Code Section 408(a)(2), as amplified by Section 1.408-2(d) of the Treasury Regulations, and serves as custodian of such IRAs; and

Whereas, Plan Administrator (named above) acts as plan administrator for the Plan, and either Plan Sponsor or Plan Administrator has engaged the IRA Investment Program referenced above, which utilizes the Recordkeeper/Designated Representative (named above) to recordkeep IRAs for such Automatic Rollovers (each an "Automatic Rollover IRA") to be custodied in an omnibus account at the Custodian; and

Whereas, in furtherance of the foregoing, the Plan Sponsor is hereby engaging Custodian to provide custodial services for such Automatic Rollover IRAs in an omnibus account custodied at Custodian with the Designated Representative for such omnibus account; and

Whereas, in order to comply with the above-referenced Code and DOL Regulation requirements, the Plan Sponsor desires to establish Automatic Rollover IRAs by transferring Mandatory Distributions to the Custodian as necessary to comply with the Code and the DOL Regulations.

Now, therefore, in consideration of the preambles and the agreements contained herein, and for other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Parties hereto agree as follows:

**Section 1.**        **Appointment of the Custodian as Automatic Rollover IRA Provider.** The Plan Sponsor has selected the Custodian and the Custodian has agreed to provide services related to establishment of Automatic Rollover IRAs sponsored by the Custodian to hold Automatic Rollovers from the Plan.  The Plan Sponsor utilizes Plan Administrator as plan administrator for the Plan, and the Plan Administrator hereby authorizes the Designated Representative (named above), to provide recordkeeping services to the Automatic Rollover IRAs established per the Plan. The execution of this Agreement is

intended to satisfy the fiduciary responsibility provision of Section 404(a) of ERISA and the DOL
Regulations to the extent applicable to the Plan.

      **Section 2.**      <u>**Scope of Agreement.**</u> This Agreement sets forth the basic terms and conditions
pursuant to which the Custodian agrees to provide and the Plan Sponsor agrees to secure from the
Custodian services related to Automatic Rollover IRAs, as supplemented by the IRA Adoption
Agreement and the IRA Disclosure Statement. The services provided hereunder shall be subject to the
general terms and conditions of the IRA Custodial Account Agreement when, as, or if so executed by the
IRA Holder (defined below). Services under this Agreement will commence for Mandatory Distributions
made from the Plan on or after the Effective Date.

      **Section 3.**      <u>**Plan Sponsor Directions.**</u>

      **(a)**      The Plan Sponsor hereby directs the Custodian to establish IRAs to receive
Automatic Rollovers from the Plan in accordance with Section 401(a)(31)(B) of the Code, the DOL
Regulations, and the terms of the Plan upon receipt by the Custodian of "Instructions" from the Plan
Sponsor, through the Designated Representative, sufficient to establish same. As used herein, the term
Instructions shall mean any oral, written, or electronic direction given to the Custodian in a form and
manner required or accepted by the Custodian. The Custodian may require that any Instruction be in
writing or in an electronic format, and may recognize standing requests, directions, or requisitions as
Instructions. The Plan Sponsor understands and agrees that the Custodian will custody such IRAs in an
omnibus account, and that account-holder level records will be kept by the Designated Representative.
The Plan Sponsor shall provide Instructions to the Designated Representative consisting of such
information and data in the form of electronic files and in a format as shall be reasonably requested by the
Designated Representative regarding specific participant information necessary to establish such IRAs,
including without limitation the name of the Plan, the name of the participant, the address of the
participant that is the most recent mailing address for the participant in the records of the participant's
employer and the Plan administrator, the tax identification number of the participant, and the birth date of
the participant.

      **(b)**      Upon receipt of confirmation from the Designated Representative that an IRA
has been established, the Plan Sponsor will cause the direct rollover of the Mandatory Distribution from
the Plan to the Custodian, which will custody the IRA in an omnibus account and invest the Mandatory
Distribution as instructed by the Plan Sponsor through the Designated Representative. The transfer by the
Plan Sponsor of an electronic file containing the necessary participant information, and the receipt of the
corresponding rollover amounts will serve as evidence of the Plan Sponsor's authorization and direction
to establish an IRA for each of the individuals included in such electronic files. The Plan Sponsor shall
promptly notify the Designated Representative of any errors in the information transmitted and shall
direct the Designated Representative with respect to actions to correct such errors.

      **(c)**      The Plan Sponsor hereby directs the Custodian to invest the corpus of each IRA
opened pursuant to this Section in the Investment Option (named above). This direction shall remain in
place until such time as when the Designated Representative communicates the Plan Sponsor's new
direction, if any, for investment in a new Investment Option.

      **Section 4.**      <u>**Responsibilities.**</u>

      **(a)**      <u>**Of the Custodian.**</u>  The Custodian has opened or will open an omnibus account
to custody the Automatic Rollover IRAs established under this Agreement.  The Custodian will take
direction from the Designated Representative as to the receipt of the Mandatory Rollovers, the
investments within the Automatic Rollover IRAs, and as to distributions or rollovers from the Automatic

Rollover IRAs. Upon receipt of the assets the Custodian will invest the assets as directed by the Designated Representative for the Plan Sponsor, and the Custodian will assess fees and expenses in accordance with the schedule attached to this Agreement as Attachment A.

      **(b)**    **Of the Designated Representative**. Upon receipt of sufficient Instructions (as defined in Section 3(a)) from the Plan Sponsor or its designated agent in the form of electronic files, the Designated Representative will establish an IRA on behalf of an individual participant based upon the Instructions so provided. The Designated Representative will provide (or cause the provision to) the Plan Sponsor the IRA identifying information and confirmation that the Custodian is prepared to receive a transfer of assets from the Plan. In accordance with the notification requirements of Section 408(a) of the Code and Section 1.408-6 of the Treasury regulations, the Designated Representative will provide, at the address provided by the Plan Sponsor as the participant's most recent mailing address in the records of the participant's employer and the Plan administrator pursuant to Section 3(a) above, the following information to the individual participant for whom the Automatic Rollover IRA is to be established (the "IRA Holder"): (a) an IRA Adoption Agreement completed with the account opening information as provided by the Plan Sponsor; and (b) an IRA Disclosure Statement. The Designated Representative will update the IRA information with any corrected or updated information as provided by the IRA Holder from time to time. Neither the Designated Representative nor the Custodian will have any obligation to verify the accuracy of the information as provided by the Plan Sponsor or to search for or ascertain the whereabouts of the IRA Holder until such time as required minimum distributions are to commence.

      **Section 5.**    <u>**Fees and Expenses.**</u> The Plan Sponsor understands and agrees that:

      **(a**)    Only cash may be rolled into an Automatic Rollover IRA;

      **(b)**    Each Automatic Rollover IRA will bear fees and expenses in accordance with the fee schedule attached as Attachment A to this Agreement; and

      **(c)**    Such fees and expenses may change from time to time upon at least 30 days written notification to the Plan Sponsor, but will not exceed fees and expenses that would be charged by the Custodian for a comparable IRA established for reasons other than the receipt of an Automatic Rollover.

      **Section 6.**    <u>**Enforcement by Participant.**</u> This Agreement, as it relates to the establishment of the IRA and other IRA-specific provision, shall be enforceable by a Plan participant with respect to a Mandatory Distribution transferred to an Automatic Rollover IRA established for the benefit of such participant and such participant will be able to take full control of the IRA upon execution of an IRA custodial account agreement.

      **Section 7.**    <u>**Plan Sponsor Representations and Warranties.**</u>

      **(a)**    <u>**Generally.**</u> The Plan Sponsor represents and warrants that:

      (1)    This Agreement has been duly authorized, executed and delivered by and constitutes a valid and binding agreement of the Plan Sponsor. Neither the execution nor delivery of this Agreement nor the transaction contemplated hereby, will result in any breach of a charter, bylaw, partnership agreement, order, law, rule or regulation to which the Plan Sponsor is a party or otherwise applicable to the Plan Sponsor;

      (2)    The Plan is a tax-qualified retirement plan under Code Section 401(a), et seq., a plan described in Code Section 403(b),  or a plan described in Code Section 457(b) sponsored by a

4

State, political subdivision of a State, or an agency or instrumentality of a State or political subdivision of a State, and includes Mandatory Distribution and Automatic Rollover provisions with respect to distributions made after the Effective Date;

(3)    Transfers of Mandatory Distributions to the Custodian are consistent with the terms of the Plan and applicable law;

(4)    The Plan Sponsor shall furnish participants with a summary plan description, or a summary of material modifications, that describes the Plan's Automatic Rollover provisions and the explanation required by Title 29 of the Code of Federal Regulations, Section 2550.404a-2(c)(4) or Section 2550.404a-3(e), as applicable;

(5)    The Plan Sponsor has determined that (i) the Investment Option is designed to preserve principal and provide a reasonable rate of return consistent with liquidity, and (ii) the Investment Option seeks to maintain, over the term of the investment, the dollar value that is equal to the amount invested in the Investment Option by the Automatic Rollover IRA, except insofar as fees and expenses may be charged to such IRA in accordance with Section 5 hereof;

(6)    A copy of the IRA Custodial Account Agreement, the IRA Disclosure Statement, rate of return information with respect to the Investment Option, and the Fee Disclosure are available to the Plan Fiduciary upon request;

(7)    The Investment Option is the only option available under Automatic Rollover IRAs established pursuant to this Agreement.  However once an IRA custodial account agreement is executed, the IRA Holders may select additional investment options under the IRA Investment Program.  The respective IRA Holders may incur account establishment, annual maintenance, and other administrative fees if any such IRA Holder directs the transfer of the corpus of his or her Automatic Rollover IRA to another investment option with another IRA provider;

(8)    The selection of the Custodian, the Designated Representative, and the Investment Option will not result in a non-exempt prohibited transaction under ERISA Section 406;

(9)    With respect to each data transmission, the account opening information provided to the Designated Representative, along with the direction to establish the IRA, is the most recent and accurate information available to the Plan and the Plan Sponsor, and the Plan participant for which the Automatic Rollover is made has not elected to receive the distribution directly; and

(10)    The Plan Sponsor acknowledges that, at the time of the IRA Holder's death, if the participant who has become the IRA Holder has not designated a beneficiary or the IRA Holder's beneficiary is not alive, the death benefit will be paid in the following order of priority to:

1. The IRA Holder's surviving spouse
2. The IRA Holder's children, including adopted children in equal shares (and if a child is not living, that child's share will be distributed to that child's living descendants)
3. The IRA Holder's surviving parents, in equal shares
4. The IRA Holder's estate

This provision exists until such time as the IRA Holder designates a beneficiary and/or executes an IRA custodial account agreement.

**(b)     Survival**. The provisions of Section 7(a) shall survive the termination of this Agreement.

**Section 8.     Custodian Representations and Warranties.** The Custodian represents and warrants that:

**(a)     ** This Agreement has been duly authorized, executed and delivered by the Custodian and constitutes a valid and binding agreement of the Custodian. Neither the execution nor delivery of this Agreement nor the transaction contemplated hereby will result in any breach of any charter, by law, order, law, rule or regulation to which the Custodian is a party or which is otherwise applicable to the Custodian.

**(b)     ** The Automatic Rollover IRA fees and expenses described in Attachment A to this Agreement shall at all times be comparable to fees and expenses for similar IRAs provided by the Custodian for reasons other than the receipt of a Mandatory Distribution.

**(c)     Disclaimer**. Except as expressly set forth in this Agreement, no Party makes any other representations or warranty and specifically disclaims all other representations or warranties, express or implied, including, without limitation, any implied warranties of merchantability and fitness for a particular purpose.

**Section 9.     Confidentiality.** The Parties recognize that in the course of implementing and providing the services described herein, each Party may disclose to the other "Confidential Information." All such Confidential Information, individually and collectively, and other proprietary information disclosed by a party shall remain the sole property of the party disclosing the same, and the receiving party shall have no interest or rights with respect thereto. Each party agrees to maintain all such Confidential Information in trust and confidence to the same extent that it protects its own proprietary information, and not to disclose such Confidential Information to any third party without the written consent of the other party(ies). Each party further agrees to take all reasonable precautions to prevent any unauthorized disclosure of Confidential Information. In addition, each party agrees not to disclose or make public to anyone, in any manner, the terms of this Agreement, except as required by law, without the prior written consent of the other party(ies). As used in this Section, the term Confidential Information shall mean proprietary information of the Parties to this Agreement, including but not limited to, their inventions, confidential information, know-how, trade secrets, business affairs, prospect lists, product designs, product plans, business strategies, finances, and fee structures. Personal Information that is exchanged shall also be deemed Confidential Information hereunder. "Personal Information" means personal information about an identifiable individual including, without limitation, name, address, contact information, age, gender, income, marital status, finances, health, employment, social security number and trading activity or history. Personal Information shall not include the name, title or business address or business telephone number of an employee of an organization in relation to such individual's capacity as an employee of an organization.

**Section 10.     Direction to Other Party.** The Plan Sponsor and Custodian, as applicable may appoint one or more individuals in writing to provide direction and information to each other. Each Party may rely on the directions received and reasonably believed to be from the individuals designated as authorized and shall be fully indemnified by the other Party for any action taken or omitted by it in reliance upon a properly signed direction by an authorized Party.

**Section 11.     Authorized Parties.** The Plan Sponsor is responsible for obtaining and paying all fees and charges necessary to permit the delivery of information and funds between the Plan's

6

administrator or recordkeeper, the Plan, and the Automatic Rollover IRA Custodian, as contemplated by this Agreement.

    **Section 12.    Indemnification.** The Plan Sponsor hereby agree(s) to indemnify, defend and hold the Custodian and its affiliates, and their respective directors, managers, officers, employees, agents and other representatives (the "Indemnified Parties") harmless from any and all losses, costs, excise taxes, expenses, fees, liabilities, damages, claims of any nature whatsoever, including but not limited to legal expenses, court costs, reasonable legal fees, costs of or associated with enforcement actions, investigations, suits, and regulatory or other actions and appeals thereof resulting from their reasonable reliance upon any certificate, notice, confirmation, or Instruction, purporting to have been delivered by the Plan Sponsor or its agent or the Designated Representative ("Plan Representative(s)"). The Plan Sponsor waives any and all claims of any nature it now has or may have against the Indemnified Parties, which arise, directly or indirectly, from any action that the Custodian reasonably takes in good faith in accordance with any certificate, notice, confirmation, or Instruction from the Plan Sponsor or its agent or the Designated Representative. The Plan Sponsor and the Plan Administrator also hereby agree to indemnify, defend and hold the Indemnified Parties harmless from and against any and all losses, costs, excise taxes, expenses, fees, liabilities, damages, claims of any nature whatsoever, including but not limited to legal expenses, court costs, reasonable legal fees, costs of or associated with enforcement actions, investigations, suits, and regulatory or other actions and appeals thereof, arising, directly or indirectly, out of any loss or diminution of the Automatic Rollover IRA resulting from changes in the market value of the Automatic Rollover IRA assets; reliance, or action taken in reasonable reliance, on Instructions from Plan Sponsor or one or more Plan Representatives; any exercise or failure to exercise investment direction authority by the Plan Sponsor or by a Plan Representative; any other act or failure to act by Plan Sponsor; any prohibited transaction or disqualification of a Plan, including, but not limited to, a prohibited transaction or plan disqualification that is caused by any action taken or not taken by the Custodian in reasonable reliance on Instructions from the Plan Sponsor; or any other act the Custodian takes in good faith hereunder that arises under this Agreement or the administration of the Automatic Rollover IRA pursuant hereto.

    The Custodian shall not be liable to the Plan Sponsor for any act, omission, or determination made in connection with this Agreement except for its gross negligence or willful misconduct. To the fullest extent permissible under applicable law, and notwithstanding the foregoing, however, the Custodian shall not be liable for any losses arising from its compliance with Instructions from the Plan Sponsor or a Plan Representative, or executing, failing to execute, failing to timely execute or for any mistake in the execution of any Instructions, unless such action or inaction is by reason of the gross negligence or willful misconduct of the Custodian.

    The provisions of this Section 12 shall survive the termination, amendment or expiration of this Agreement.

    **Section 13.    Term.** This Agreement is effective as of the Effective Date and shall continue in full force and effect until terminated. This Agreement may be terminated by any Party at any time upon sixty (60) days' prior written notice to the address of record of the other Party.

    **Section 14.    Governing Law.** This Agreement shall be governed by and construed in accordance with and enforced pursuant to the laws of the State of Colorado to the extent not preempted by the controlling federal law.

    **Section 15.    Limitation on Custodian's Liability; Force Majeure.** To the fullest extent permissible under applicable law, the Custodian shall not be responsible for any default or act or omission provided that the Custodian acted in good faith, unless such conduct was found to constitute gross

negligence or willful misconduct, and shall not be liable for undertaking any act on instructions from the Plan Sponsor or its agent or Designated Representative or for failing to act in the absence of such instructions. The Custodian shall not be responsible for losses caused directly or indirectly by conditions beyond its reasonable control or that could not be avoided by the exercise of due care, including, but not limited to an act of God, any mechanical failure, war, natural disaster, government restrictions or changes, exchange, market rulings, strikes, interruptions of communications or data processing services, or disruptions in orderly trading on any exchange or market. The Parties acknowledge that unforeseen circumstances may temporarily prevent or prohibit the Custodian from performing its services. If the Custodian is not able to perform its related services for a period of more than three (3) Business Days, the Custodian shall notify the Plan Sponsor in writing.

       **Section 16.**    **Notices.** Any notice or authorization required to be given pursuant to the terms and provisions hereof will be deemed effective on the date of receipt and may be sent by United States postal service first class mail, postage prepaid, overnight delivery service or by certified or registered mail to the addresses below. Either Party may change its address by written notice to the other Party.

       **Section 17.**    **Successors and Assigns.** Either the Plan Sponsor or the Custodian may assign or transfer this Agreement or any of its rights and obligations under this Agreement, upon 30 days prior written notice to the other Parties, provided that the assignee agrees in writing to the obligations of the assigning Party, as set forth in this Agreement.

       **Section 18.**    **Waiver.** The Parties voluntarily, knowingly and irrevocably waive any right to have a jury participate in resolving any dispute between the Parties arising out or in any way related to this Agreement. No claim may be made by the Plan Sponsor against the Custodian for any lost profits or any special, indirect or consequential damages in respect of any breach or wrongful conduct in any way related to this Agreement.

       **Section 19.**    **Waiver of Jury Trial.** The Parties voluntarily, knowingly and irrevocably waive any right to have a jury participate in any dispute between the Parties arising out of or in any way related to this Agreement.

       **Section 20.**    **USA Patriot Act Notification.** The following notification is provided pursuant to Section 326 of the USA Patriot Act of 2001, 31 U.S.C. Section 5318:

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or entity that opens an account, including any deposit account, treasury management account, loan, other extension of credit, or other financial services product. What this means for Plan Sponsor: When Plan Sponsor opens an Automatic Rollover IRA account for a Plan participant, the Custodian will ask for such participant's name, taxpayer identification number, residential address, date of birth, and other information that will allow the Custodian to identify the participant. The Custodian may also ask, if the participant is an individual, to see or review a copy of their driver's license or other identifying documents.

       **Section 21.**    **Severability of Provisions.** Should any provision of this Agreement be held invalid or illegal for any reason, such illegality or invalidity shall not affect the remaining provisions of this Agreement, but shall be fully severable, and the Agreement shall be construed and enforced as if such illegal or invalid provision had never been inserted herein.

**Section 22.** **Word Usage.** Whenever appropriate, words used in this Agreement in the singular may mean the plural, the plural may mean the singular, and the masculine may mean the feminine. The words "herein," "hereof," "hereto" and "hereunder" shall refer to this Agreement.

**Section 23.** **Complete Agreement.** This Agreement, including the schedule of fees attached hereto as Attachment A, embodies the entire agreement and understanding of the Parties relating to the subject matter hereof.

**Section 24.** **Execution in Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and no other counterpart need be produced. Telephonic or electronic facsimile copies of original signatures, writings, or initials on this Agreement shall be as valid as the original signatures, writings, or initials.

**Section 25.** **Waiver of Punitive and Consequential Damages.** Neither Party shall be liable to the other Party for punitive, consequential, indirect of remote damages, including but not limited to loss of profits, loss of investment, or any other losses resulting from or arising out of this Agreement.

**Section 26.** **Amendments.** This Agreement may be amended by the Custodian, provided written notice of such amendment is sent to Plan Sponsor at least thirty (30) days prior to the effective date of any such amendment.

**Section 27.** **Binding Effect.** This Agreement shall inure to the benefit of and be binding on the successors and assigns of the Parties.

[Signatures appear on the next page.]

In Witness Whereof, the Parties hereto have caused this Agreement to be executed as of the Effective Date.

**PLAN SPONSOR**

Plan Name: _____

Address: _____

_____

Contact Number: _____

By: _____

Print Name: _____

Title: _____

Date: _____


**Matrix Trust Company:**

717 17th Street, Suite 1300

Denver, Colorado 80202

By: _____

Print Name: ___Amy Reuter_____

Title: ___Senior Vice President_____

Date: _____

10

**Attachment A: Autonomy IRA Fees and Expenses**

---

**Individual Account Fee Schedule**

---

**Service Fees**

**Asset-Based Fees**

| | |
|---|---|
| -Individual Account Assets: Less than $100,000 | 3.333 bps monthly |
| -Individual Account Assets: $100,000 to $250,000 | 2.667 bps monthly |
| -Individual Account Assets: Greater than $250,000 | 2.083 bps monthly |

**Fixed Dollar Fees (in addition to Asset-Based Fees)**

| | |
|---|---|
| -Individual Account Assets: Less than $5,000 (as of the billing date) | $55.00 annually |
| -Individual Account Assets: $5,000 to $35,000 (as of the billing date) | $35.00 annually |
| -Individual Account Assets: Greater than $35,000 (as of the billing date) | $0.00 annually |

**Investment Fees**

**Asset-Based Fees**

| | |
|---|---|
| -Individual Account Assets: Less than $100,000 | 5.000 bps monthly |
| -Individual Account Assets: $100,000 to $250,000 | 5.000 bps monthly |
| -Individual Account Assets: Greater than $250,000 | 5.000 bps monthly |

**Additional Services**

| | |
|---|---|
| Check/ACH Distributions | |
| -One-Time | $25 each |
| -Recurring | $8 each |
| Tax Form Corrections (Paper) | $25 each |
| Paper Statements | $5 each |
| Lost Accountholder Search | $10 each |
| Stop Payments | $25 each |

---

**IRALOGIX Supplemental Fee Schedule**

---

| | |
|---|---|
| IRALOGIX Escheatment Fee | $125 per hour |
| (not collected by or received by Matrix Trust Company) | |

11

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is **655 West Broadway, Suite 800, San Diego, CA 92101**

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION TO EMPLOY HAYS FINANCIAL GROUP, LLC AS QUALIFIED RETIREMENT PLAN CONSULTANT TO THE CHAPTER 7 TRUSTEE PURSUANT TO 11 U.S.C. § 327(a) AND FED. R. BANKR. P. 2014; DECLARATION OF BRIAN WHINNERY IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>September 23, 2025</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Paul F Ready** - becky@farmerandready.com
- **Lovee D Sarenas** - lovee.sarenas@dinsmore.com, wendy.yones@dinsmore.com; adelya.ashralieva@dinsmore.com
- **United States Trustee (ND)** - ustpregion16.nd.ecf@usdoj.gov
- **Nancy J Zamora (TR)** - zamora3@aol.com, nzamora@ecf.axosfs.com

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) <u>September 23, 2025</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> Honorable Ronald A. Clifford III
> United States Bankruptcy Court
> 1415 State Street, Suite 233 / Courtroom 201
> Santa Barbara, California 93101-2511
>
> SLBiggs
> 10960 Wilshire Blvd., Ste. 1100
> Los Angeles, CA 90024
>
> Hays Financial Group
> 901 S. Marquette Ave., Ste. 1990
> Minneapolis, MN 55402

☐  Service information continued on attached page

#64259166v3

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE
TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to
F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons
and/or entities by personal delivery, overnight mail service, or (for those who consented in writing
to such service method), by facsimile transmission and/or email as follows. Listing the judge here
constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be
completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and
correct.

| September 23, 2025 | Wendy A. Yones | /s/ Wendy A. Yones |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

#64259166v3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
655 West Broadway, Suite 800, San Diego, CA 92101

A true and correct copy of the foregoing document entitled: **DECLARATION THAT NO PARTY REQUESTED A HEARING ON MOTION [LBR 9013-1(o)(3)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* 10/16/25_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Thomas Phinney     tphinney@ffwplaw.com, akieser@ffwplaw.com;docket@ffwplaw.com**
- **Paul F Ready     becky@farmerandready.com**
- **Lovee D Sarenas     lovee.sarenas@dinsmore.com,**
  **wendy.yones@dinsmore.com;adelya.ashralieva@dinsmore.com**
- **Felicita A Torres     torres@g-tlaw.com**
- **United States Trustee (ND)     ustpregion16.nd.ecf@usdoj.gov**
- **Nancy J Zamora (TR)     zamora3@aol.com, nzamora@ecf.axosfs.com**

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On *(date)* 10/16/25_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**SLBiggs**
**10960 Wilshire Blvd., Ste. 1100**
**Los Angeles, CA 90024**

**Hays Financial Group**
**Attn: Nick Carlson**
**901 S. Marquette Ave., Suite 1990**
**Minneapolis, MN 55402**

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/16/25 | Wendy A. Yones | /s/ Wendy A. Yones |
|----------|----------------|--------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                    Page 3                    **F 9013-1.2.NO.REQUEST.HEARING.DEC**